89 F.3d 836
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Plaintiff-Appellee,
v.
Michael Lee MILLIS, Defendant-Appellant.
 No. 95-5474.
 United States Court of Appeals, Sixth Circuit.
 June 19, 1996.
 
 Before: KRUPANSKY, NELSON, AND RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Michael Lee Millis ("Millis") appealed his conviction for the following crimes: (1) aiding and abetting Michael Creeden ("Creeden") in the commission of an armed bank robbery and an armed robbery of a Subway Sandwich Shop; (2) two counts of aiding and abetting Creeden in the use and carrying of a firearm during and in relation to crimes of violence (during the two robberies); and (3) possession of a firearm by a convicted felon. Millis argued that the Hobbs Act, which made the robbery of the Subway a federal crime, was unconstitutional under the recent Supreme Court decision in United States v. Lopez, 115 S.Ct. 1624 (1995), which set out some limits on Congress' power to legislate under the Commerce Clause. His conviction on the other counts should not stand, argued Millis, because the majority of the case against him was the testimony of Creeden whose identity and relationship to Millis was only learned as the result of an illegal stop and search of a vehicle in which they were driving. Millis also argued that an improper in limine evidentiary ruling chilled the defendant's right to testify. Finally, Millis attacked his sentence, arguing that the judge failed to recognize that he had discretion to depart downward under the guidelines. For the reasons given below, defendant's arguments are without merit, and his conviction and sentence is AFFIRMED.
 
 
 2
 On June 2, 1984, Millis and Creeden were stopped by an Illinois State trooper in what was found to be a pretextual and illegal stop.[1] The officer found a large amount of cash in Millis' pockets and a magazine clip loaded with four rounds of ammunition on Creeden. The officers asked Creeden if there was a gun in the vehicle, and Creeden said that there was one under the mat on the passenger's side. The officers arrested Creeden and Millis for possession of a firearm by a convicted felon. At that point, the officers had no idea about any other crimes the two had committed.
 
 
 3
 After he was arrested Creeden was read his Miranda rights and was not questioned by the officer who transported him to the jail. Two days after his arrest, without police solicitation, Creeden called the Madison County Sheriff's office and left a message that he was interested in speaking to a detective in reference to other crimes he committed. When state detectives contacted Creeden, he informed them that he did not want them but wanted an FBI agent instead. The following Tuesday, FBI special agents met with Creeden, advised him again of his Miranda rights and interviewed him. Creeden stated that he was interested in talking about some criminal activities, some of which he played a part in, in return for a deal with the government. He then described his and Millis' involvement in two bank robberies and the robbery of several subway sandwich stores; Creeden was the stick up man and Millis drove the getaway car. Creeden testified to these facts at trial.
 
 
 4
 Millis' argument that, under Lopez, the Hobbs Act is beyond Congress' power under the Commerce Clause is without merit. Unlike the statute in Lopez, the Hobbs Act involves an activity, crimes against small shops, which courts have repeatedly found has a substantial effect on interstate commerce. United States v. Local 807, 118 F.2d 684, 687-88 (2nd Cir.1941); United States v. Stillo, 57 F.3d 553 (6th Cir.), cert. denied 116 S.Ct. 383 (1995). Also, the Hobbs Act contains a specific jurisdictional requirement; it applies to "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce...." 18 U.S.C. § 1951(a) (emphasis added). Finally, the particular shop involved is located on an interstate highway and receives supplies from interstate commerce. Thus, under Katzenbach v. McClung, 379 U.S. 294, 304 (1964), it affects interstate commerce.
 
 
 5
 Millis' argument that Creeden's testimony should be excluded as deriving from an illegal stop should be rejected under the attenuation exception to the exclusionary rule. Creeden initiated his cooperation with authorities on his own initiative, several days after the arrest. This independent willingness to testify dissipates the taint of the original stop. United States v. Ceccolini, 435 U.S. 268, 277-78 (1978).
 
 
 6
 Millis failed to preserve his argument that the judge chilled his right to testify through a pretrial instruction that any testimony by Millis which contradicted suppressed evidence might open the door to the use of suppressed evidence. Millis did not testify at the trial. "Because an accused's decision whether to testify 'seldom turns on the resolution of one factor,' a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify." Luce v. United States, 469 U.S. 38, 41 (1984). Because Millis did not testify, he has not preserved this issue for appeal.
 
 
 7
 This court also rejects Millis' argument that the bulk of the evidence against him was the testimony of Creeden who the jury should have found not credible. Credibility determinations are strictly the province of the jury, United States v. Gallo, 763 F.2d 1504 (6th Cir.), cert. denied, 475 U.S. 1017 (1986). Moreover, Millis took advantage of his opportunity to cross-examine Creeden and impugn his credibility before the jury. An attack on the credibility of a witness is simply a challenge to the quality of the government's evidence and not the sufficiency of the evidence, and is not subject to review. United States v. Adamo, 742 F.2d 927, 935 (6th Cir.1984).
 
 
 8
 Finally, the transcript of the sentencing hearing reveals that the lower court judge was aware of his authority to depart downward, but only in those cases where mitigating factors existed which were not taken into account by the guidelines drafters. Finding no such factors in the instant case, the trial judge properly refused to depart downward, and his decision is not subject to appeal. United States v. Pickett, 941 F.2d 411, 417-18 (6th Cir.1991).
 
 
 9
 Accordingly, the judgment and sentence of the district court are AFFIRMED.
 
 
 
 [1]
 The officer testified that he stopped the vehicle because it lacked a front license plate and because the driver failed to use a turn signal when changing lanes. The Magistrate Judge found the stop to be pretextual, and the government does not now appeal the Magistrate Judge's finding