**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Quintus SMITH, Defendant–Appellant.**

No. 97–2250.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 5, 1999.

Decided and Filed June 28, 1999.

Rehearing Denied Sept. 10, 1999.

---

Diane L. Marion (argued and briefed), Office of the U.S. Attorney, Detroit, Michigan, for Appellee.

Thomas V. Wilhelm (argued and briefed), Bloomfield Hills, Michigan, for Appellant.

Before: JONES, DAVID A. NELSON, and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

Quintus Smith and several confederates robbed a number of grocery and party stores in Michigan at gunpoint. A jury convicted Smith on one count of robbery, in violation of 18 U.S.C. § 1951 (the Hobbs Act); six counts of using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c); and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). He was acquitted on ten counts of robbery, two counts of attempted robbery, and seven counts of using or carrying a firearm during and in relation to a crime of violence.

On appeal, Smith argues that the Supreme Court's decision in *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), renders the Hobbs Act robbery charge unconstitutional, either facially or as applied to him. On Smith's view, *Lopez* requires the government to prove that each robbery substantially affected interstate commerce. Smith also argues that his acquittal on five of the robbery charges deprived the district court

of jurisdiction to determine the § 924(c) counts associated with those five robberies. Finally, Smith argues that the government presented insufficient evidence to convict him of the § 922(g) charge. We affirm the judgment and sentence of the district court.

## I

On July 12, 1996, the Ypsilanti Party Store was robbed by two masked men, one of whom carried a silver revolver. The men pointed the gun at the clerk and ordered him to open the cash register and lie on the floor, then took between $1,500 and $2,000 in cash plus lottery tickets. The store's primary sales are beer, wine, cigarettes, and lottery tickets. On August 23, 1996, Toma's Party Store was robbed by three masked men, all of whom were armed, one with a "machine gun." The robbers stuffed cash and lottery tickets into a red duffle bag, then left in a white car. Thirty percent of Toma's business is sales of beer, wine, and cigarettes. The next night, Norm's Market was robbed by three masked men, dressed in black and armed with a Spectre 9–mm assault pistol and what looked like an Uzi. The robbers took cash, money orders, and lottery tickets. Norm's primarily sells beer, wine, cigarettes, and some groceries. On September 21, 1996, three men wearing masks and carrying guns attempted to rob the S & H Party Store. The cash register would not open, customers entered the store, and the three men fled. S & H sells primarily beer, wine, and cigarettes. On September 27, 1996, the Super J Party Store was robbed by two masked men, one of whom displayed a long gun. The men jumped the counter and took cash and lottery tickets, then fled when the owner yelled from the back of the store. The clerk identified a red duffel bag later recovered from Smith's home as the bag used in the robbery. On October 3, 1996, two armed men dressed in black and wearing masks attempted to rob the Regal Market. The owner of the store struggled with one of the men, during which a part fell off of the robber's gun. The men fled and the owner gave the gun part to the police.

On October 5, 1996, Romulus, Michigan, police officers were conducting surveillance of the Super J Party Store. Officer Barnes observed a Buick Regal at the scene, which sped towards him. Barnes jumped out of the way and fired his shotgun at the car. Barnes got a close look at the driver of the car, whom he identified as Smith when he saw Smith's photograph later that night in the course of executing a search warrant at Smith's home. The Buick was observed parked at Smith's home later on the night of October 5, and suspects from the Super J Party Store robbery had barricaded themselves in the house. Police officers obtained a search warrant, entered the house, and recovered a blood-stained tee shirt, a red duffel bag, a glove, a leather hood, a black face mask, and two ski masks. Torn lottery tickets were found in the toilet. The officers arrested William Bates, Thaddeus Buckner, Torrey Smith, and Jermaine Walton. The next day, October 6, 1996, Barnes arrested Smith at a restaurant in Romulus. Smith admitted that he was at the Super J market on the evening of October 5, that he drove the Buick away from the store, and that he had been injured by police shotgun fire.

Eugene Thompson pleaded guilty to the robbery of Toma's Market. He testified that he drove his girlfriend's white Grand Am to the store with Smith and a young boy called "Male" in the back seat and Lawrence Beard in the front passenger seat. "Male" was identified by another associate as William Bates. The other three men got out of the car with a red duffel bag and went into the store. A customer ran out of the store, then Smith, Beard, and Bates ran out of the store and to the car, pulling off their face masks as they ran. As they got into the car, Smith berated Bates for letting the customer get away, saying that Bates should have shot him.

Thompson testified that he was present when Smith, Beard, and Bates robbed Norm's Market on August 24, 1996. According to Thompson, he and Jermaine Walton remained in Thompson's Bronco while the others, dressed in black, robbed the store. Thompson also testified that he rented his Davis Industries .380–caliber pistol to Beard on two occasions after August 24, 1996 and that he and friends found Smith bleeding at a gas station the night of October 5, 1996, and drove him to Shoney's restaurant in Romulus.

Thaddeus Buckner testified that he began robbing stores with Smith in February 1996, and continued until he was arrested on October 6, 1996. Buckner testified that he, Smith, and Bates went to the Ypsilanti Party Store in Smith's Buick Regal. Buckner had a .357 revolver supplied by Smith. Buckner and Bates entered the store, took cash and lottery tickets, put them in the red duffel bag later recovered from Smith's house, and returned to the car. Buckner also testified that he was present at the attempted robberies of the S & H Market and the Regal Market. He confirmed the testimony of the store personnel and stated that at the Regal Market, part of a sawed-off shotgun fell off when Bates struggled with the store owner.

Bates identified the red duffel bag recovered at Smith's house as the bag used in the robberies. He also testified that a .32 pistol, a .380 pistol, and a .357 handgun were kept in the red duffel bag, and handed out by Smith before each robbery.

Witnesses established that all the stores robbed by Smith and his associates dealt primarily, or at least significantly, in beer, wine, and cigarettes. Federal Bureau of Alcohol, Tobacco, and Firearms agents testified that tobacco and alcohol products, with few exceptions, are manufactured outside of Michigan and must be transported there for sale.

Smith was indicted on multiple counts of robbery, multiple counts of using or carrying a firearm during and in relation to a crime of violence, and one count of being a convicted felon in possession of a firearm. He was convicted by a jury on one count of robbery, six counts of using or carrying a firearm during and in relation to a crime of violence, and the felon-in-possession count. Smith filed a motion for arrest of judgment and judgment of acquittal as to the five § 924(c) convictions associated with five robbery counts of which he was acquitted, arguing that the district court lost jurisdiction over the firearms counts when the jury acquitted him of the predicate robberies. At sentencing, the district court denied Smith's motion and sentenced him to approximately twenty-six years for the robbery and felon-in-possession convictions and 105 consecutive years for the § 924(c) convictions. Smith appeals the judgment and sentence of the district court.

## II

Smith charges three errors on appeal. First, he argues that he should have been acquitted of all Hobbs Act counts, because either (1) after the Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Hobbs Act is unconstitutional as applied to him or, in the alternative, (2) the government did not prove the required nexus between the robberies and interstate commerce. Second, Smith argues that his acquittal on five of the Hobbs Act counts deprived the district court of jurisdiction over the § 924(c) counts based on those predicate crimes. Third, Smith argues that the government presented insufficient evidence to convict him of possession of a firearm by a felon.

We review constitutional challenges to criminal convictions *de novo*, as questions of law. *United States v. Knipp*, 963 F.2d 839, 842 (6th Cir.1992) (citing *Loudermill v. Cleveland Bd. of Educ.*, 844 F.2d 304, 308 (6th Cir.1988)).

■ When a defendant challenges the sufficiency of the evidence to support a conviction, we inquire whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *United States v. Kincaide,* 145 F.3d 771, 781 (6th Cir.1998) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

## A. The *Lopez* Challenge

■ Smith asserts that after *Lopez,* the government must prove that the robberies had a "substantial effect" on interstate commerce, instead of the *"de minimis"* effect previously required. Unfortunately for Smith, the question of whether *Lopez* changed the *de minimis* standard has been widely litigated. Although this Circuit has not published a decision directly on point, in an unpublished opinion one panel reasoned that "the Hobbs Act involves an activity, crimes against small shops, which courts have repeatedly found has a substantial effect on interstate commerce," and held that this argument is "without merit." *United States v. Millis,* 1996 WL 341181 at *1 (6th Cir.1996) (unpublished). All of the other circuits that have considered the issue have held that the *de minimis* standard for Hobbs Act charges survived *Lopez,* although the Fifth Circuit has recently granted a rehearing on this issue. *See United States v. Harrington,* 108 F.3d 1460, 1465 (D.C.Cir. 1997); *United States v. Alfonso,* 143 F.3d 772, 775 (2d Cir.1998); *United States v. Farrish,* 122 F.3d 146, 147 (2d Cir.1997); *United States v. Hickman,* 151 F.3d 446, 456 (5th Cir.1998), *reh'g granted and op. vacated,* 165 F.3d 1020 (5th Cir.1999); *United States v. Miles,* 122 F.3d 235 (5th Cir.1997); *United States v. Robinson,* 119 F.3d 1205 (5th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1104, 140 L.Ed.2d 158 (1998); *United States v. Nelson,* 137 F.3d 1094, 1102 (9th Cir.1998); *United States v. Woodruff,* 122 F.3d 1185 (9th Cir.1997); *United States v. Beydler,* 120 F.3d 985, 987 (9th Cir.1997); *United States v. Nguyen,* 155 F.3d 1219, 1224 (10th Cir.1998); *United States v. Bruce,* 78 F.3d 1506, 1509 (10th Cir.1996); *United States v. Bolton,* 68 F.3d 396, 398–99 (10th Cir.1995); *United States v. Paredes,* 139 F.3d 840 (11th Cir.1998) (Wellford, J., sitting by designation); *United States v. Castleberry,* 116 F.3d 1384, 1387 (11th Cir.1997).

The reasoning of the Tenth Circuit is persuasive: in *Lopez,* "the Court recognized that if a statute regulates an activity which, through repetition, in aggregate has a substantial effect on interstate commerce, 'the *de minimis* character of individual instances arising under the statute is of no consequence.'" *Bolton,* 68 F.3d at 399 (internal citation omitted) (quoting *Lopez,* 514 U.S. at 558, 115 S.Ct. 1624). We join our sister circuits and hold that the *de minimis* standard for the interstate commerce effects of individual Hobbs Act violations survived *Lopez.*

■ In the alternative, Smith argues that the government failed to prove the nexus between the robberies and interstate commerce. In making this argument, Smith continues to assert that the correct standard is "substantial effect," rather than *"de minimis* effect." As discussed above, all that the government needed to show was that Smith's activities had a *de minimis* effect on interstate commerce. By proving that the stores Smith robbed did substantial business in beer, wine, and tobacco products, and that virtually none of such products originate in Michigan, the government met its burden. Viewing the evidence in the light most favorable to the government, a rational trier of fact could find beyond a reasonable doubt that Smith's activities had a *de minimis* effect on interstate commerce.

The proper standard for Hobbs Act convictions is the long-standing *"de minimis* effect on interstate commerce" standard. The government proved that Smith's activities had a *de minimis* effect on interstate commerce. The district court did not err

when it denied Smith's motion for acquittal.

## B. Jurisdiction Over the § 924(c) Counts

▉ The indictment charged Smith with several counts of robbery. Associated with each robbery count was a count of using or carrying a firearm during a crime of violence. Smith was convicted on six counts of using or carrying a firearm, and only one count of robbery. Thus, he was convicted on five counts of using or carrying a firearm in robberies of which he was acquitted. Smith argues that the district court lost jurisdiction over the five firearm counts when Smith was acquitted of the predicate robberies.

> Whoever, during and in relation to any crime of violence or drug trafficking crime ... *for which he may be prosecuted in a court of the United States,* uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, to imprisonment for ten years, and if the firearm is a machine gun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years.... [T]he ... term of imprisonment imposed under this subsection [shall] run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried.

18 U.S.C. § 924(c) (emphasis added). The language of the statute is facially contrary to Smith's theory. It requires only that the defendant have committed a violent crime *for which he may be prosecuted* in federal court. It does not even require

that the crime be charged; *a fortiori,* it does not require that he be convicted.

In the case before this court, Smith *was* properly prosecuted in federal court for all of the robberies. Smith's challenge to the constitutionality of the Hobbs Act notwithstanding, the robberies were crimes for which Smith could be prosecuted in federal court.

The case upon which Smith relies, *United States v. Collins,* 40 F.3d 95 (5th Cir. 1994), does not support his position. In *Collins,* the Fifth Circuit found that the theft of a privately-owned car and cellular telephone did not have even a *de minimis* effect on interstate commerce. Consequently, the trial court had no jurisdiction *over the predicate crime.* In other words, the predicate crime *could not properly have been prosecuted in federal court.* Therefore, the § 924(c) conviction could not stand. The *Collins* court noted that robbery is likely to have a greater effect on interstate commerce when directed at businesses rather than individuals. 40 F.3d at 99 and n. 18.

▉ Smith has not shown that the conduct for which evidence was introduced did not constitute a federal offense. A jury verdict will not be overturned simply because it is inconsistent or because the jury acquitted a defendant of a predicate offense. *See United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (inconsistent verdicts provide no basis for reversal; conviction for compound crime upheld where defendant was acquitted of predicate crime); *United States v. Patrick,* 965 F.2d 1390, 1396 (6th Cir.1992) (inconsistent jury verdicts may not form the basis for setting aside proper convictions on other counts); *United States v. Clemmer,* 918 F.2d 570, 573 (6th Cir.1990); *United States v. Martin,* 897 F.2d 1368, 1373 (6th Cir.1990). Smith cites *United States v. Nelson,* 27 F.3d 199 (6th Cir. 1994) in support of his view. However, *Nelson* does not help his case. In *Nelson,* the jury instructions left out an element of the uncharged predicate offense and this

court reversed on the ground that the jury might not have convicted if it had known the actual elements. On the general subject of § 924(c) and predicate offenses, the *Nelson* court stated:

> [n]ot only can the mandatory five-year sentence be imposed consecutive to a term of imprisonment imposed by a state court, it can be imposed in the absence of any conviction of an underlying drug offense. To establish the required predicate, the fact of the offense rather than a conviction is all that is necessary.

*Id.* at 200.

The jury found by its verdict in the § 924(c) counts that Smith committed the robberies, using a gun. There was sufficient evidence presented for a reasonable jury to have found beyond a reasonable doubt that Smith committed the five robberies in question. The fact that the jury chose not to convict Smith of the robberies themselves is irrelevant. The district court did not err when it denied Smith's motion to arrest judgment.

### C. Sufficiency of the Evidence

■ Finally, Smith argues that there was insufficient evidence to convict him of being a felon in possession of a firearm. Smith notes that no guns were found in his home on the night of October 5, 1996, the last day he lived there, and that at trial several accounts were given as to who had what guns during the robberies. However, there was considerable testimony that Smith kept the weapons and handed them out for robberies, in light of which a rational jury might find beyond a reasonable doubt that Smith possessed the guns. The district court did not err when it allowed the jury verdict to stand with respect to the § 922(g) charge.

### III

We hold that *Lopez* did not change the long-standing "*de minimis* effect on interstate commerce" nexus requirement of the Hobbs Act to a "substantial effect" standard. We also hold that § 924(c) does not require a conviction for the predicate offense. Finally, the evidence presented at trial was sufficient for a reasonable jury to have found, beyond a reasonable doubt, that Smith possessed the guns used in the robberies. Accordingly, the judgment and sentence of the district court are AFFIRMED.