**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jay K. TANIGUCHI; James W. White,**
**Defendants–Appellants.**

**Nos. 00–4495, 00–4496.**

United States Court of Appeals,
Sixth Circuit.

Oct. 11, 2002.

508

Before SILER, COLE, and CLAY, Circuit Judges.

OPINION

COLE, Circuit Judge.

This action stems from a conspiracy that led to a series of armed robberies in the Columbus, Ohio metropolitan area. The Defendant–Appellants, Jay Kevin Taniguchi and James Wesley White, argue that the evidence was not sufficient to convict them on a number of the counts for which they were indicted, that the district court improperly admitted certain evidence against them, and that the district court made several improper determinations at sentencing. Taniguchi and White now appeal their convictions and sentences.

This appeal presents eight issues for our review: (1) whether the evidence was sufficient to convict Taniguchi and White of brandishing a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c); (2) whether the evidence was sufficient to establish a *de minimis* effect on interstate commerce to convict Taniguchi and White for interfering with commerce by threats or violence, in violation of the Hobbs Act, 18 U.S.C. § 1951; (3) whether the evidence was sufficient to convict Taniguchi of bank larceny, in violation of 18 U.S.C. § 2113(b); (4) whether the district court properly admitted evidence against Taniguchi and White under FED.R.EVID. 404(B); (5) whether the district court properly denied White's motion to sever his trial from that of Co-defendant Taniguchi; (6) whether the district court properly found that Taniguchi had a "second or subsequent" § 924(c) conviction; (7) whether the district court properly imposed a two-level enhancement under U.S.S.G. § 3B1.1 to Taniguchi's sentence because he played a leadership role in the conspiracy; and (8) whether the superseding indictment was insufficient because it failed to include the aiding and abetting language of 18 U.S.C. § 2 and thus did not give White sufficient notice of the crimes charged in counts two, three, and seven of the indictment. None of these issues has merit. Accordingly, we AFFIRM the judgment of the district court.

BACKGROUND

A. Factual Background

Taniguchi and White were both part of a broad-ranging conspiracy to rob armored

car companies and local businesses of cash at gunpoint. Taniguchi was the mastermind behind the conspiracy, recruiting insiders and employees of the businesses that were targeted to assist in the execution of the robberies. White was one of the muscle-men of the operation, using his imposing size to carry out the actual robberies. According to the case presented by the government, the conspiracy resulted in five overt acts committed in and around the Columbus, Ohio area: (a) the December 18, 1998 robbery of an armored truck at the Columbus Convention Center ("Convention Center"); (b) the March 30, 1999 robbery of an armed truck at Westland Mall; (c) the May 31, 1999 robbery of the Red Zone Nightclub ("Red Zone"); (d) the mid-June 1999 burglary of the Red Zone; and (e) the summer of 1999 attempted robbery of an armored truck at River Valley Mall in Lancaster, Ohio. At least three other individuals, Mark Blankenship, Rami Shehadeh, and Lawrence Stevenson, were also part of this conspiracy, but their cases are not before us on appeal.

Taniguchi was the director of security at the Red Zone in the summer of 1998, while White, Shehadeh, and Blankenship were all employed as bouncers at the club. Blankenship was also employed by Metropolitan Armored Car ("Metropolitan") as a courier. According to Blankenship, Taniguchi approached him in the fall of 1998 to discuss robbing one of the Metropolitan armored trucks. Ultimately, Blankenship, Taniguchi, White, and Shehadeh agreed on a plan where Blankenship would be "robbed" while he was acting as courier for Metropolitan and stocking automated teller machines inside the Convention Center. On December 18, 1998, White drove the robbery vehicle to the Convention Center, and Shehadeh took $60,000 in cash from

Blankenship—along with Blankenship's weapon—before leaving the scene with White. The money was later divided by the four conspirators into five shares, with Taniguchi claiming that the fifth share was for an unnamed participant.

On another occasion, the four conspirators agreed to stage another robbery from Metropolitan while it was stocking automated teller machines at Westland Mall. To plan for the robbery, Blankenship communicated the armored truck's schedule to Taniguchi and White. Blankenship and another Metropolitan employee, Terry Hupp, arrived at the mall on March 30, 1999. After Hupp entered the mall to deliver the cash, White held him up and was seen exiting the mall holding two bags containing money cassettes for the automated teller machines. The conspirators later split nearly $100,000 in proceeds at the Red Zone.

In May of 1999, a mutual friend introduced Lawrence Stevenson to Taniguchi. Phone records confirm that Stevenson and Taniguchi spoke a number of times during this period—allegedly discussing ways to rob the Red Zone. The plan the two ultimately agreed on was for Stevenson to break into the owner's office at the nightclub, lie in wait for Taniguchi and Chris Corso (the owner) to enter the office, and then at gunpoint (with a gun provided by Taniguchi) tie up Taniguchi and Corso with duct tape before stealing the evening's proceeds. On May 31, 1999, the plan went according to schedule, and Corso was robbed of the club's proceeds. At a meeting the next day, Stevenson returned the gun and gave Taniguchi his share of the proceeds of the robbery.

In mid-June, 1999, Stevenson, Taniguchi, and White began to plan a second robbery of the Red Zone.[1] Taniguchi relayed to Stevenson the layout of the club

---

1. During this period, White and Taniguchi    also admitted to Stevenson that they had been

and where the office safe was located. Shortly thereafter, Stevenson broke into the Red Zone office, hid in a crawl space until everyone had left the club for the evening, removed the safe, and carried it outside the club to White. Later White and Stevenson opened the safe at a friend's apartment, and Taniguchi arrived to receive his share of the money.

Taniguchi and White also planned a third armored truck robbery at the River Valley Mall for the summer of 1999. After considerable planning, White and Taniguchi called the robbery off when the armored truck did not arrive on schedule.

The United States also alleges that Taniguchi and White were engaged in a continuing conspiracy of planning various robberies that extended through at least January 2000.

### B. Procedural History

On March 14, 2000, a grand jury for the Southern District of Ohio returned a six-count indictment against defendants Taniguchi and White. Count one charged Taniguchi and White with violation of the Hobbs Act, 18 U.S.C. § 1951, for their participation in a broad conspiracy involving multiple robberies; Count two charged Taniguchi and White with violation of the Hobbs Act, 18 U.S.C. § 1951, for their participation in the Metropolitan armored truck robbery; Count three charged White with brandishing a firearm in the commission of those crimes, in violation of 18 U.S.C. § 924(c); Count four charged Taniguchi with brandishing a firearm in the commission of those crimes in violation of 18 U.S.C. § 924(c); Count five charged Taniguchi with a violation of the Hobbs Act, 18 U.S.C. § 1951, for participation in the Red Zone robbery; and Count six charged Taniguchi with a violation of 18 U.S.C. § 924, brandishing a firearm during a crime of violence. A superseding indict-

ment was filed on May 16, 2000. That indictment repeated the other charges but also added a bank larceny charge (Count seven), in violation of 18 U.S.C. § 2113(b), against Taniguchi and White. Both indictments cited 18 U.S.C. § 2, the aiding and abetting statute, but did not directly include language from the statute.

Taniguchi and White both pleaded not guilty to these charges, and a jury trial commenced on July 10, 2000 before Judge Marbley in the United States District Court for the Southern District of Ohio. Following the conclusion of the government's case, White and Taniguchi made a motion to dismiss counts two, four, and six of the superseding indictment pursuant to FED. R.CRIM. P. 29(c). The district court denied this motion. Taniguchi made a second Rule 29(c) motion again at the conclusion of evidence, and again it was denied by the district court. The jury returned its verdict on July 24, 2000, finding Taniguchi and White guilty on all counts.

The district court held a sentencing hearing for Taniguchi and White on November 15, 2000. Taniguchi was sentenced to 120 months on the two Hobbs Act violations, and two consecutive sentences of 84 and 300 months on the two firearm violations. White was sentenced to 78 months on the two Hobbs Act violations, and a consecutive sentence of 84 months on the one firearm violation. Both defendants filed a timely notice of appeal.

### DISCUSSION

A. Whether the evidence was sufficient to convict Taniguchi and White of brandishing a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c).

#### 1. STANDARD OF REVIEW

A denial of a FED. R. CRIM. P. 29(c) motion for judgment of acquittal is re-

---

involved in the Convention Center and West-                    land Mall armored truck robberies.

viewed *de novo.* *See United States v. Canan,* 48 F.3d 954, 962 (6th Cir.1995). However, the decision of the district court must be affirmed if the evidence, viewed in a light most favorable to the government, "would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt." *Id.* (citing *United States v. Montgomery,* 980 F.2d 388, 393 (6th Cir.1992)).

### 2. ANALYSIS

Taniguchi and White argue that there was insufficient evidence to convict them of brandishing a firearm in the commission of a robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). A § 924(c)(1)(A)(ii) violation requires the government to prove that, during and in relation to any crime of violence or drug trafficking crime, the defendant carried or brandished a firearm. 18 U.S.C. § 924(c)(1)(A). To be accomplished "in furtherance of the conspiracy," the conduct must "promote the objectives of the conspiracy." *United States v. Monus,* 128 F.3d 376, 392 (6th Cir.1997). A conviction under the aiding and abetting theory of liability for a § 924(c)(1)(A)(ii) violation requires (a) an act by the defendant that contributes to the execution of the crime, and (b) an intent to aid the execution of the crime. *See United States v. Lowery,* 60 F.3d 1199, 1202 (6th Cir. 1995); *United States v. Lawson,* 872 F.2d 179, 181 (6th Cir.1989). Where an accomplice has offered such assistance or encouragement to the principal, then she may be punished as a principal. 18 U.S.C. § 2; *United States v. Webber,* 208 F.3d 545, 553 (6th Cir.2000).

■ Taniguchi and White fail to make a credible case that their Rule 29(c) motion regarding their § 924(c)(1)(A)(ii) convictions should have been granted by the district court. White's single § 924(c)(1)(A)(ii) conviction is based on the fact that he brandished a firearm during his robbery of the Westland Mall. Evidence from the trial demonstrated White's direct role in the planning of the robbery with Blankenship, and his later admission to Stevenson of his role in the robbery. Testimony from Jimmie Harris, Henry Bokye–Danwye, Todd Lancaster, and Stevenson all support the theory that White had robbed Hupp (the Metropolitan courier) at gunpoint at the Westland Mall. Hupp's testimony establishes that the suspect who robbed him at Westland Mall stuck a gun to his head, and that one of the exhibits at trial could have been the gun used in the crime. White argues that the only way his conviction for § 924(c)(1)(A)(ii) could be supported by the evidence is if the jury inferred that he was the sole robber, and that he carried a gun. Though he is right that the evidence does not support his being the only robber, that is not an element of § 924(c)(1)(A)(ii), and was not an element of the jury's finding that he brandished a weapon. Even giving credence to Blankenship's testimony that White was not carrying the gun openly when he left the mall, that says little about whether White brandished the gun while actually robbing Hupp. In conjunction with Hupp's testimony, more than enough evidence exists for the district court to deny's White's Rule 29(c) motion. 18 U.S.C. § 924C)(1)(A).

■ Taniguchi's two § 924(c)(1)(A)(ii) convictions are based on an aiding and abetting theory of liability for the Westland Mall robbery and the May 31, 1999 robbery of the Red Zone. While Taniguchi is correct that he was present at neither of these robberies, the evidence supporting his guilt on these charges is considerable. Taniguchi admitted planning the Westland Mall armored truck robbery to a number of witnesses, and supplied one of the firearms involved in the robbery. Taniguchi also planned the Red Zone robbery, and gave Stevenson the firearm used to rob the club owner. Taniguchi claims that the

fact that Stevenson actually brandished the gun during the robbery was unplanned and thus outside the scope of the jointly undertaken criminal activity. However, Taniguchi's admonition to Stevenson "not to use the gun" may be interpreted to mean "do not discharge the gun" as readily as "do not brandish it." Furthermore, the brandishing was a natural consequence of Taniguchi's assistance in planning an armed confrontation and supplying the attacker with a weapon. *See Lowery,* 60 F.3d at 1202. Following the robbery, Taniguchi apparently did not feel that the conspiracy had diverged too much from plan when he retrieved the firearm from Stevenson and took his share of the cash. Taniguchi's conduct contributed to the execution of the crime, and certainly evidenced his intent to accomplish the aims of the crime. Under aiding and abetting liability, this is sufficient conduct and intent for Taniguchi to be punished as a principal in the crime. *Lawson,* 872 F.2d at 181; 18 U.S.C. § 2; 18 U.S.C. § 924(c)(1)(A)(ii).

Accordingly, we affirm the district court's decision to reject the Rule 29(c) motion for judgment of acquittal with regard to Taniguchi's and White's convictions for violation of 18 U.S.C. § 924(c).

B. Whether the evidence was sufficient to establish a *de minimis* effect on interstate commerce to convict Taniguchi and White for interfering with commerce by threats or violence, in violation of the Hobbs Act, 18 U.S.C. § 1951.

Taniguchi and White claim that the United States has no authority under the Commerce Clause to prosecute a Hobbs Act violation, and that even if it did, sufficient evidence was not presented at trial to establish a *de minimis* effect on interstate commerce. Congress has the authority to enact three categories of Commerce Clause legislation: (a) it may regulate the channels of interstate commerce; (b) it may regulate and protect the instrumentalities of interstate commerce, including persons or things in interstate commerce; and (c) it may regulate intrastate activity if it has a substantial effect on commerce. *United States v. Page,* 167 F.3d 325, 334 (6th Cir.1999) (en banc) (citing *United States v. Lopez,* 514 U.S. 549, 558–59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995)).

The Hobbs Act most neatly fits within the third *Lopez* category of commerce clause legislation, and our circuit has explicitly endorsed its constitutionality post-*Lopez.* *United States v. Valenzeno,* 123 F.3d 365, 368 (6th Cir.1997) (finding that, unlike the statute at issue in *Lopez,* Congress explicitly drafted § 1951 to have an explicit connection with or effect on interstate commerce). Where the statute falls short of this standard, the proper remedy is to create a jurisdictional element where the government must prove a nexus with interstate commerce. *Id.*

We have established a "de minimis effect on interstate commerce" as the proper jurisdictional element for Hobbs Act convictions. *United States v. Smith,* 182 F.3d 452, 457 (6th Cir.1999).[2] Next we must look to whether the United States has met this *de minimis* effect on interstate com-

---

**2.** A panel decision subsequent to *Smith* concluded that to be consistent with *Lopez,* the "jurisdictional test of a federal statute such as the Hobbs Act is whether the regulated activity 'substantially affects' interstate commerce." *United States v. Wang,* 222 F.3d 234, 244 (6th Cir.2000). Another panel decision subsequent to *Wang* cites the Hobbs Act jurisdictional element as "interference with interstate commerce"—effectively endorsing the standard used in *Smith. United States v. Turner,* 272 F.3d 380, 384 (6th Cir.2001). Given this intra-circuit conflict on whether a *"de minimis"* or *"substantially effects"* element should

merce jurisdictional element of 18 U.S.C. § 1951 under a Rule 29(c) sufficiency of the evidence challenge. It is sufficient under this *de minimis* standard to show that the money used in a bribe was taken from a company involved in interstate commerce. *See United States v. Mills,* 204 F.3d 669, 671 (6th Cir.2000). While robbing an individual of money alone may not meet this *de minimis* effect on interstate commerce, robbing a business that is engaged in interstate commerce will. *Wang,* 222 F.3d at 240. The theft of funds from banks that are federally insured also will meet this interstate commerce jurisdictional element. *See, e.g., United States v. Parr,* 972 F.2d 971 (8th Cir.1992).

Taniguchi and White fail on their Rule 29(c) motion that the evidence was insufficient to meet the *de minimis* effect of interstate commerce jurisdictional element of § 1951. Because the superseding indictment charges Taniguchi and White with Hobbs Act violations for the armored truck robberies as well as the Red Zone robbery, the evidence for both offenses must meet the *de minimis* effect on interstate commerce standard in order to survive the Rule 29(c) motion. *Smith,* 182 F.3d at 457.

█ We begin our analysis with the armored truck robberies. A security officer for Huntington National Bank, one of the banks whose money Metropolitan was transporting on the day of the robbery, testified at trial that the bank was federally insured and that it was engaged in interstate commerce. The defendants' strongest argument is based on accounting—that Metropolitan did not actually

transport the cash for Huntington or National City (the other bank involved in these robberies), but instead bought the money, transported it, and then sold it back to the bank at the relevant location. White argues that this is similar to the restaurateur whose home invasion and robbery was held not to have a sufficient connection to interstate commerce—even though the funds taken had been generated at and transported from the restaurant earlier that day. *Wang,* 222 F.3d at 245. The United States successfully rebuts this argument by noting that Metropolitan's internal accounting practices did not impact its duty to transport money for federally insured banks. This transportation role is obvious since no bank official is present at the automated teller machines to "buy back" the money once Metropolitan completes its delivery. Finally, Metropolitan in and of itself is a business that is engaged in interstate commerce—notably by transporting and stocking automated teller machines that dispense funds to customers of federally insured banks. On these grounds, the *de minimis* effect on interstate commerce jurisdictional element of 18 U.S.C. § 1951 is satisfied. *Smith,* 182 F.3d at 457.

Next we examine whether the Red Zone robbery meets the *de minimis* effect on interstate commerce jurisdictional element of § 1951. The parties concede that the Red Zone is engaged in commercial activities in and affecting interstate commerce, and that it purchased and sold items in interstate commerce. Were this a robbery of the business proceeds of the Red Zone

be used as the jurisdictional element for Hobbs Act convictions, we look to *Salmi v. Sec. of Health and Human Servs.,* 774 F.2d 685, 689 (6th Cir.1985), which instructs that a prior decision by a panel remains controlling over subsequent panel decisions unless intervening decisions of the United States Supreme Court or this Court sitting en banc require modification of that decision. *Smith, Wang,* and *Turner* all occur post-*Lopez,* and so *Smith's* and *Turner's de minimis* standard as a jurisdictional element for § 1951 is controlling. *Smith,* 182 F.3d at 456–57.

that took place at the Red Zone, there would be little doubt that the *de minimis* effect on interstate commerce jurisdictional element of § 1951 is met. *Turner*, 272 F.3d at 384. However, the defendants claim that they did not rob the Red Zone—they robbed its owner, Corso, in his individual capacity. They further claim that Corso was robbed while in his private office[3] of funds that were intermingled with his separate real estate business.

■ We find these claims insufficient to negate the *de minimis* effect on interstate commerce jurisdictional element of § 1951 sufficient for a Rule 29(c) motion. The defendants offer no support for their assertion that the funds stolen from the Red Zone were personal funds or from Corso's separate real estate business; no evidence is included in the record that the funds at issue were anything other than proceeds from the Red Zone. The office in question may have had a separate entrance from the Red Zone, but it clearly served as the center for the business and accounting records of the club. Finally, the fact that the office had a kitchenette and restroom does not convert it into the personal residence at issue in *Wang*—Corso used the office for business purposes and did not keep the office as his primary residence. These factual elements from the record are adequate to distinguish this case from the robbery of personal funds at a primary residence at issue in *Wang*, 222 F.3d at 238. Accordingly, the *de minimis* effect on interstate commerce jurisdictional element of 18 U.S.C. § 1951 is satisfied. *Smith*, 182 F.3d at 457.

Thus, we affirm the district court and deny the Rule 29(c) motion on grounds that the evidence is sufficient to establish the jurisdictional element of a conviction under 18 U.S.C. § 1951.

**C.  Whether the evidence was sufficient to convict Taniguchi of bank larceny, in violation of 18 U.S.C. § 2113(b).**

Taniguchi next argues that the evidence was insufficient to convict him of bank robbery under 18 U.S.C. § 2113 because he did not rob a bank, but rather an armored truck. A conviction under § 2113 requires three elements: (a) that by force or threat of force; (b) the defendant attempts to take an item of value; (c) in the possession or custody of a bank insured by the FDIC. *See United States v. Waldon*, 206 F.3d 597, 605 (6th Cir.2000) (interpreting 18 U.S.C. § 2113(a)). The United States must provide testimony by a bank employee as to FDIC status to meet the third element of this test. *United States v. Harris*, 165 F.3d 1062, 1066 (6th Cir. 1999).

■ The evidence is more than sufficient to convict Taniguchi of bank robbery under 18 U.S.C. § 2113, especially under the manifest miscarriage of justice standard applicable because Taniguchi did not make his Rule 29(c) motion to the district court. *United States v. Abdullah*, 162 F.3d 897, 903 (6th Cir.1998). As mentioned above, testimony of Metropolitan and a bank representative at trial establish that the bank was insured by the FDIC, and that Metropolitan was transporting money under the ownership of the federally insured bank. *See Waldon*, 206 F.3d at 605. As such, more than enough evidence exists for the district court to determine that the funds were still in the custody of the bank even while being transported by Metropolitan. *See, e.g., United States v.*

---

**3.** Although the owner's office was in the same building as the Red Zone, it had a separate entrance that was inaccessible from the inside of the club. Moreover, at oral argument Taniguchi noted that because the office had a kitchenette and private bathroom, it was similar to a private dwelling like that at issue in *Wang*, 222 F.3d at 236.

*King,* 178 F.3d 1376 (11th Cir.1999) (supporting this interpretation and applying 18 U.S.C. § 2113 to the robbery of an armored truck). There being no manifest miscarriage of justice, we conclude that the funds were in the banks' possession at the time of the robbery. *Abdullah,* 162 F.3d at 903.

Accordingly, we reject Taniguchi's claim that the evidence was insufficient to support his bank robbery conviction under 18 U.S.C. § 2113.

D. Whether the district court properly admitted "other acts" evidence against Taniguchi and White under FED. R.EVID. 404(b).

1. STANDARD OF REVIEW

We review the admission of FED.R.EVID. 404(b) evidence under a three-part test: (a) factual determinations regarding the occurrence of a prior bad act are reviewed for clear error; (b) legal determinations of admitting Rule 404(b) evidence are reviewed *de novo;* and (c) the weighing of probative value versus prejudice under the Rule is reviewed for abuse of discretion. *United States v. Myers,* 102 F.3d 227, 233 (6th Cir.1996); *see also United States v. Brown,* 147 F.3d 477, 482–83 (6th Cir. 1998).

2. ANALYSIS

Taniguchi and White claim that the district court erred by admitting evidence under Rule 404(b) in order to show a common modus operandi or plan. Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

In order to admit such evidence, the district court must first establish that the proffered evidence is admissible for one of these proper purposes. *United States v. Talley,* 164 F.3d 989, 999 (6th Cir.1999). Then, it must determine whether the probative value of the evidence is outweighed by the danger of unfair prejudice. *United States v. Feinman,* 930 F.2d 495, 499 (6th Cir.1991); *see also* FED.R.EVID. 403. The district court should issue a limiting instruction establishing the basis for the inclusion of the Rule 404(b) evidence. *United ed States v. Ward,* 190 F.3d 483, 490 (6th Cir.1999).

Taniguchi and White fail to establish that they were biased by the inclusion of the Rule 404(b) evidence. Several events from the conspiracy were entered into evidence under Rule 404(b): (a) the plan to rob an armored truck at the River Valley Mall in the summer of 1999; (b) information about a subsequent robbery of the Red Zone; and (c) the plan to steal an automated teller machine in Circleville, Ohio. To the degree that this evidence established a common preparation or plan, the series of armored truck robberies (both of which were transporting money to refill automated teller machines) did show a common motive or *modus operandi* with the proffered robbery at River Valley Mall. That the conspiracy no longer had an insider at the armored truck company, or planned to attack the automated teller machine itself rather than the courier as he was about to refill the machine as for the

planned Circleville heist, is a meaningless distinction. *Talley,* 164 F.3d at 999. Finally, White was directly involved in the operation of the second Red Zone burglary; he was active in the planning stages, and as an employee of the club was privy to the same inside information that formed the foundation of many of the conspiracy's heists. He also waited outside the club, took the safe from Stevenson, and served as the getaway driver.

Given the relevance of this testimony to establishing a common *modus operandi,* the claim that this evidence was not introduced for a proper purpose is without merit, *see Talley,* 164 F.3d at 999; moreover, the probative value of the evidence was outweighed by the danger of unfair prejudice. *Feinman,* 930 F.2d at 499. To the degree that any prejudice did result from the admission of this evidence, the district court issued a timely limiting instruction prior to the jury's deliberations that highlighted the purpose for which the evidence was admitted. *Ward,* 190 F.3d at 490.

Accordingly, we affirm the district court and conclude that the "other acts" evidence was properly admitted pursuant to Rule 404(b).

**E. Whether the district court properly denied White's motion to sever his trial from that of Co-defendant Taniguchi.**

### 1. Standard of Review

A motion for severance must be renewed at the close of evidence to be preserved on appeal. *United States v. Allen,* 160 F.3d 1096, 1106 (6th Cir.1998); *United States v. Hudson,* 53 F.3d 744, 747 (6th Cir.1995). We review a denial of a motion for severance for abuse of discretion. *United States v. Marks,* 209 F.3d 577, 584 (6th Cir.2000). Where a claim for severance was denied but not renewed, we may review the issue for plain error. *Allen,* 160 F.3d at 1106.

### 2. Analysis

White cites that he was prejudiced by the district court's failure to sever his case from that of Co-defendant Taniguchi because of the disproportionate amount of testimony that would be offered at trial against Taniguchi. FED. R.CRIM. P. 14 states that:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election of separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

This motion for severance should be granted if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. *Zafiro v. United States,* 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). However, the federal court system has a strong preference to try together jointly indicted defendants. *United States v. Sherlin,* 67 F.3d 1208, 1216 (6th Cir.1995). This preference grows in importance when the defendants are charged with conspiracy or a common scheme. *United States v. Weiner,* 988 F.2d 629, 634 (6th Cir.1993). Even when different defendants plan inconsistent defenses, the defendant must show that the jury will be misled or confused. *United States v. Kendricks,* 623 F.2d 1165, 1168 (6th Cir.1980) (per curiam). In general, a jury is presumed to be able to follow the district court's instructions to consider each case separately. *Sherlin,* 67 F.3d at 1216.

White fails to meet his burden of establishing that he suffered the prejudice

necessary for the district court to sever his trial under Rule 14. Because he failed to renew his motion for severance at the conclusion of the trial, we review his claim of prejudice for plain error. *Allen,* 160 F.3d at 1106. White cites to a number of instances where he was prejudiced by the bad acts of Taniguchi—that he did not even know about the May 31, 1999 robbery of the Red Zone, that he was not part of the scheme to rob the Metropolitan armored truck, and that there was insufficient evidence to establish his role in the mid-June 1999 burglary of the Red Zone. As the district court noted in its opinion and order on this issue, ample evidence exists of White's far-ranging role in all aspects of the conspiracy. Even though Taniguchi and White were not both charged in every count, White has not made a showing of the specific prejudice by being jointly tried with Taniguchi— namely that he planned to call Taniguchi as a witness or conduct some other trial strategy that would be prejudiced by the joint trial. *See, e.g., United States v. Elder,* 90 F.3d 1110, 1120 (6th Cir.1996). Additionally, under the plain error test, White is unable to establish that his substantial rights were affected by the denial of the Rule 14 motion to sever, or that the error seriously affected the "fairness integrity, or public reputation of judicial proceedings." *United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002).

Accordingly, we affirm the district court's denial of the Rule 14 motion to sever.

**F. Whether the district court properly found that Taniguchi had a "second or subsequent" § 924(c) conviction.**

### 1. STANDARD OF REVIEW

A defendant may appeal a sentence if it was imposed in violation of the law, was imposed as a result of an incorrect application of the sentencing guideline, or is greater than the sentence specified in the applicable guideline range. 18 U.S.C. § 3742. Where there is no objection to the sentence before the district court, we review for plain error. *Cotton,* 535 U.S. at ——, 122 S.Ct. at 1785; *United States v. Collins,* 78 F.3d 1021, 1033 (6th Cir.1996).

### 2. ANALYSIS

Taniguchi argues that the penalty enhancement he received under 18 U.S.C. § 924(c)(1)(C) for having a second or subsequent conviction was improperly imposed by the district court rather than being proved beyond a reasonable doubt before the jury. Secondly, he claims that a similar argument applies for his § 924(c)(1)(A)(ii) enhancement for brandishing. Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum should be submitted to a jury and proved beyond a reasonable doubt. *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Where a defendant is charged and convicted of separate offenses to which § 924(c) applies, then those convictions are eligible to count as both the first and the "second or subsequent conviction" under § 924(c). *Deal v. United States,* 508 U.S. 129, 131–32, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993); *United States v. Langan,* 263 F.3d 613, 627 (6th Cir.2001).

Taniguchi fails on his claim that his "second or subsequent conviction" leading to a § 924(c)(1)(C) enhancement should have been submitted to a jury and proved beyond a reasonable doubt. Because the fact of his prior conviction is exempted from the mandate of *Apprendi,* Taniguchi is not entitled to a jury finding that he has a prior conviction. *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. Both the Supreme

Court and this Court have found that a simultaneous conviction of separate offenses eligible under § 924(c)(1)(C) is sufficient to satisfy the "second or subsequent conviction" language of this statute. *Deal*, 508 U.S. at 131–32, 113 S.Ct. 1993; *Langan*, 263 F.3d at 627. Thus, Taniguchi's claim is foreclosed by law.

A more difficult question is whether the factual finding behind the brandishing enhancement of seven years under § 924(c)(1)(A)(ii) is required to be submitted to a jury and proved beyond a reasonable doubt. This question was answered in *Harris v. United States,* —— U.S. ——, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). *Harris* held that the brandishing enhancement was a sentencing factor, *not* an element of the offense that must be submitted to a jury and proved beyond a reasonable doubt. *Id.* at 2414. As such, this claim is without merit.

■ Accordingly, we conclude that the factual determination underlying Taniguchi's sentence enhancement under § 924(c)(1)(C) is not required to be submitted to a jury because the fact of a prior conviction is exempt from the mandate of *Apprendi.*

G. Whether the district court properly imposed a two-level enhancement under U.S.S.G. § 3B1.1 to Taniguchi's sentence because he played a leadership role in the conspiracy.

### 1. STANDARD OF REVIEW

We review a district court's factual findings at sentencing for clear error. *United States v. Russell,* 76 F.3d 808, 812 (6th Cir.1996). We review *de novo* whether the facts found by the district court warrant a particular guideline provision. *United States v. Partington,* 21 F.3d 714, 717 (6th Cir.1994).

### 2. ANALYSIS

Taniguchi's next argument is that the district court erred by imposing an enhancement to his sentence pursuant to U.S.S.G. § 3B1.1 because he held a leadership role in the conspiracy. Section 3B1.1 states:

> Aggravating Role: Based on the defendant's role in the offense, increase the offense level as follows: ...
>
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity ..., increase by 2 levels.

U.S.S.G. § 3B1.1.

The Application Notes of the Guidelines are telling on when this enhancement should be applied. Application Note Two states:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

U.S.S.G. Applic. Note 2.

Application Note Four states:

> In distinguishing a leadership role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the

illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as the leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

U.S.S.G. Applic. Note 4.

A defendant must have exerted control over at least one individual within a criminal organization for the enhancement of § 3B1.1 to be warranted. *United States v. Gort–DiDonato*, 109 F.3d 318, 319–22 (6th Cir.1997). Although not required, it is highly preferable for a district court to articulate the factual basis for enhancing a defendant's sentence pursuant to U.S.S.G. § 3B1.1. *United States v. Vandeberg*, 201 F.3d 805, 810 (6th Cir.2000).

■ Taniguchi fails on his claim that the district court erred by imposing an enhancement to his sentence pursuant to U.S.S.G. § 3B1.1. The district court made a number of factual findings regarding Taniguchi's leadership role in the criminal organization. Specifically, the district court noted:

> The Court did hear the testimony and I will respond just briefly in the order that Mr. Sherman organized his remarks. With respect to the Westland Mall robbery, I think that you are correct that Mr. Blankenship provided some information, in fact, some crucial information. But that information, based on the testimony, gave Mr. Taniguchi what he needed to organize the robbery. I think that the testimony was that the defendant, Mr. Taniguchi, provided the instructions to the various participants in the robbery and set forth generally the plan; and, in addition, acted as the lookout. It was quite clever because he had all of these people doing all of the dirty work, if you will, or certainly all of these people doing things which, if the robbery went bad, could have put them in harm's way and Mr. Taniguchi acted as the lookout. With respect to the Red Zone, Mr. Taniguchi had inside information essentially. He was the director of security; he knew the internal operations of the Red Zone, he provided Lawrence Stevenson not only with the internal plans of the layout of the Red Zone but he told him about, you know, the time that everything crucial to the robbery took place. He gave Stevenson the tools necessary to complete the robbery; he arranged for Stevenson to travel into town to commit the robbery; he showed him where to break in, and detailed how it would be best to break in, and advised him as to where the money was stored. Taniguchi provided Stevenson with the knife, duct tape and two-way radio to use. And so when you look at all those things together, it's fairly clear that a two-level enhancement is appropriate as he was the leader and organizer. The same is true with the Convention Center. He discussed the details of the plan; he pretty much set forth the plan. He traveled to the Convention Center, toured the facility, he cased the joint, so to speak, and he provided Shehadeh with the equipment to carry out the larceny in the same manner as he had done with Lawrence Stevenson in the Westland Mall robbery. So the objection to No. 2 is overruled.

These findings are a sufficient articulation of the factual basis for enhancing Taniguchi's sentence pursuant to U.S.S.G. § 3B1.1, *see Vandeberg*, 201 F.3d at 810, and establish the prerequisites for the two-level enhancement listed in the Application Notes for § 3B1.1. Taniguchi recruited the members of the conspiracy, took a leadership role in the planning of the operation,

and took a larger share of the proceeds than the other members. The district court's findings also sufficiently establish that Taniguchi exerted control over at least one person within the criminal organization. *Gort–DiDonato*, 109 F.3d at 321. In fact, the evidence points to three or more people over whom Taniguchi exerted control.

Accordingly, we affirm the district court and conclude that the district court properly enhanced Taniguchi's sentence by two levels for being the leader of a criminal activity under § 3B1.1.

H.  Whether the superseding indictment was sufficient because it failed to include the aiding and abetting language of 18 U.S.C. § 2 and thus did not give White sufficient notice of the crimes charged in counts two, three, and seven of the indictment.

### 1. STANDARD OF REVIEW

We review *de novo* whether an indictment adequately alleges the elements of the offense charged. *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir.1992).

### 2. ANALYSIS

White's final argument is that the superseding indictment was insufficient because it failed to give him notice of potential aiding and abetting liability. An indictment must inform the defendant of the crime with which he is charged. *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). Proper notice is given where the defendant is fairly informed of the charge against which he must defend, and where the indictment "enables him to plead acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Mohney*, 949 F.2d 899, 903–904 (6th Cir. 1991). This Court has noted that 18

U.S.C. § 2 is embodied in every federal indictment, and that explicit notice is not required. *See United States v. Maselli*, 534 F.2d 1197 (6th Cir.1976); *United States v. Lester*, 363 F.2d 68, 72 (6th Cir. 1966). However, the Supreme Court recently reaffirmed its commitment that every offense must be charged by indictment, proved beyond a reasonable doubt, and submitted to a jury for its verdict. *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); *see also Apprendi*, 530 U.S. at 474, 120 S.Ct. 2348. Although we have not ruled on this notice element of 18 U.S.C. § 2 post-*Jones* and *Apprendi*, the Seventh Circuit recently held that "aiding and abetting is merely a theory of liability, not a substantive offense [as defined in *Jones* and *Apprendi*], and need not be charged in the indictment." *United States v. Schuh*, 289 F.3d 968, 976 (7th Cir.2002).

White fails to establish his final argument that the superseding indictment was insufficient because it did not give him notice of potential aiding and abetting liability. The superseding indictment at issue here did not include the statutory language of 18 U.S.C. § 2, but it did cite to the statute following each charge. Like the Seventh Circuit, we consider aiding and abetting merely a theory of liability, and not an offense distinct in and of itself. *Shuh*, 289 F.3d at 976. While *Jones* and *Apprendi* do highlight the importance of providing notice of all offenses in the indictment, we consider that notice to have been met here by citation of the primary offense and the citation to 18 U.S.C. § 2 even without explicit reference to the aiding and abetting language. *See Mohney*, 949 F.2d at 903–904. While White provides several solid examples of where the evidence presented establishes only principal rather than aiding and abetting liabili-

ty, he was properly indicted and received notice for both theories of liability.[4]

Accordingly, we conclude that the indictment was sufficient in citing to 18 U.S.C. § 2 to give White notice of his potential aiding and abetting liability.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

4. Given the importance *Jones* and *Apprendi* attach to the naming of all offenses in the indictment, we decline to address the question of whether the indictment before us would be sufficient had the United States failed even to cite the language of 18 U.S.C. § 2.