RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0045P (6th Cir.)
File Name: 04a0045p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*             No. 02-5163

REGINALD CHARLES ROSE, III,

    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 01-00061—Curtis L. Collier, District Judge.

Submitted: September 9, 2003

Decided and Filed: February 11, 2004

Before: MOORE and GILMAN, Circuit Judges; MILLS,
District Judge.[*]

_____

    [*] The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

---

2    *United States v. Rose*    No. 02-5163

_____

### COUNSEL

**ON BRIEF:** Anthony Martinez, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellant. Reginald Rose, III, Montgomery, Alabama, pro se.

_____

### OPINION

_____

    KAREN NELSON MOORE, Circuit Judge. The Defendant-Appellant, Reginald Charles Rose, III ("Rose"), appeals his convictions and sentence. Rose was convicted of conspiring to distribute fifty grams or more of methamphetamine mixture, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B), and of knowingly and intentionally carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 2 and 924(c). In his pro se brief, Rose raises several claims of error in the district court's acceptance of his guilty pleas. Most of these errors arise from discrepancies between the descriptions of the charges in Counts One and Three as stated in the Superseding Indictment and as stated in his written plea agreement. Rose's court-appointed counsel also filed an appellate brief and a motion to withdraw pursuant to *Anders v. California,* 386 U.S. 738 (1967), stating that he has found no meritorious grounds for appeal but nonetheless raising two possible claims of error in the calculation of Rose's sentence.

    For the reasons set forth below, we **VACATE** Rose's conviction and sentence as to Count One and **REMAND** for proceedings consistent with this opinion.

## I.  JURISDICTION

The district court had jurisdiction pursuant to 18 U.S.C. § 3231 because Rose was charged with offenses against the laws of the United States. This court has jurisdiction over the appeal under 28 U.S.C. § 1291 because Rose is appealing a conviction imposed by the district court.

## II.  BACKGROUND

### A.  Factual Background

The facts of this case are not in dispute. "In March 2001, agents with the Tennessee Bureau of Investigation ("TBI") received information from a confidential informant ("CI") that" Rose could deliver methamphetamine. Presentence Report ("PSR") at 5. The CI arranged to purchase one pound of methamphetamine from Rose and to have it delivered to a residence in Meigs County, Tennessee. On March 19, 2001, the CI and an undercover TBI agent met Rose at that residence; additional TBI agents monitored the transaction.

Ralph Vasquez ("Vasquez"), a co-defendant, accompanied Rose to the residence. Previously, in Dalton, Georgia, Eric Estrada ("Estrada") had "fronted" the methamphetamine that Rose was to deliver to the CI. Estrada had sent his associate, Vasquez, along with Rose on the March 19, 2001 transaction to ensure that Estrada received payment.

At the residence in Meigs County, Rose and Vasquez negotiated to sell an additional two pounds of methamphetamine to the CI. Rose and Vasquez told the CI that they would deliver this additional methamphetamine for $20,000 at a later date. Rose and Vasquez then delivered the original one pound of methamphetamine in exchange for $11,500. Immediately thereafter, TBI agents arrested Rose and Vasquez. When the TBI agents searched the car that Rose and Vasquez used to travel to Meigs County, they found a loaded Colt .45 in plain view.

### B.  Procedural Background

On April 11, 2001, Rose, Vasquez, and Estrada were charged in a three-count Indictment. On May 22, 2001, a Superseding Indictment named an additional three co-conspirators. In Count One of the Superseding Indictment, Rose and all five co-conspirators were charged with conspiring to distribute five hundred grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). In Count Two, Rose, Vasquez, and Estrada were charged with distributing fifty grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and 18 U.S.C. § 2. In Count Three, Rose, Vasquez, and Estrada were charged with knowingly and intentionally carrying a firearm during and in relation to the drug trafficking offenses set out in Counts One and Two, in violation of 18 U.S.C. §§ 2 and 924(c).

On September 6, 2001, Rose pleaded guilty to Counts One and Three pursuant to a written plea agreement. A sentencing hearing was held on January 4, 2002, and a judgment was entered that same day, dismissing Count Two on the government's motion. There are discrepancies between the descriptions of the charges in Counts One and Three as stated in the Superseding Indictment and as stated in the plea agreement.

On January 10, 2002, Rose filed a timely notice of appeal from the district court's judgment. On July 19, 2002, Rose's court-appointed counsel, Anthony Martinez, filed an *Anders* brief and a motion to withdraw. In his *Anders* brief, Rose's counsel stated that after reviewing the entire record, he was of the opinion that there were no meritorious grounds for an appeal. Nonetheless, in his *Anders* brief, Rose's counsel raised the issues of whether the district court erred by including the additional two pounds of methamphetamine when determining Rose's offense level and whether the

district court erred as to the extent of the downward departure in Rose's sentence on the government's 5K1.1 motion.[1]

On August 29, 2002, Rose filed a pro se response to his counsel's *Anders* brief. In his response, Rose raises the following three claims of error: (1) that the district court conducted Rose's plea hearing in a manner that violated Federal Rule of Criminal Procedure 11 ("Rule 11") and that the district court did not have jurisdiction to accept a plea to an offense that was not charged in the Superseding Indictment;[2] (2) that there was insufficient evidence to support Rose's conviction for carrying a firearm during and in relation to a drug trafficking offense;[3] and (3) the

---

[1] The first issue, regarding the district court's inclusion of the additional two pounds of methamphetamine when determining Rose's base offense level, is analyzed more fully in *United States v. Vasquez*, 352 F.3d 1067 (6th Cir. 2003), affirming the sentence of Rose's co-defendant, Vasquez.

The second issue, regarding the district court's grant of a three-level downward departure for the government's 5K1.1 motion, is meritless and easily disposed of because we have held that a defendant cannot appeal the degree of a district court's downward departure for substantial cooperation, so long as the district court remained within the sentencing guidelines. *United States v. Gregory*, 932 F.2d 1167, 1169 (6th Cir 1991).

[2] It is not clear whether Rose raises these as two distinct claims of error, but we will treat them as such. On page four of his brief, Rose states, "The Court never had jurisdiction to sentence as the charges presented to the Court were different than the charges brought in the indictment." Appellant's Br. at 4. Then, on page five of his brief, Rose states, "In order to be able to make an informed decision on the plea agreement, Rose would have had to know that he was not pleading guilty to the charges in the indictment, rendering the plea moot." *Id*.

[3] Again, it is not clear whether Rose is complaining about the sufficiency of the evidence to support his conviction, or about the sufficiency of the Superseding Indictment. Appellant's Br. at 4. On page four of his brief, Rose claims the "charge can not stand on its merit," which seems to allege that the evidence was insufficient to support his conviction. Appellant's Br. at 4. On that same page, Rose also claims the

---

additional two pounds of methamphetamine that Rose and Vasquez agreed to deliver should not have been considered in calculating Rose's sentence. The government has not filed an appellate brief in this case.

The extensive and rather complicated procedural history will be set out in more detail below as it pertains to each of the issues.

### III.  ANALYSIS

**A.   District Court's Compliance With Rule 11 for Count One**

#### 1.  Factual Background

The description of the charge in Count One in the plea agreement differs from that in the Superseding Indictment. In the Superseding Indictment, Count One states:

> REGINALD CHARLES ROSE, III, and others unknown to the Grand Jury, did *combine, conspire, confederate, and agree* to knowingly, intentionally, and without authority violate Title 21, United States Code, Sections 841(a)(1) and *841(b)(1)(A), that is, to distribute 500 grams or more* of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846.

R. at 35 (Superseding Indictment) (emphases added). In the plea agreement, paragraph one states:

> The defendant [Rose] agrees to plead guilty to the following counts of a Superseding Indictment filed against him in the above-styled case:

---

charge was not "proper at indictment," which seems to allege that the Superseding Indictment was insufficient. *Id*.

Count One charging him with a violation of Title 21, United States Code, Section 846, *i.e.*, *attempt to violate* Title 21, United States Code, Section 841(a)(1) and *841(b)(1)(B), that is, to knowingly, intentionally and without authority distribute fifty (50) grams* or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

R. at 81 (Plea Agreement) (emphases added). The description of the charge in Count One in the plea agreement differs from that in the Superseding Indictment in three respects: (1) it changes the charge from "conspiring to distribute" to "attempting to distribute"; (2) it changes the statutory provision from 21 U.S.C. § 841(b)(1)(A) to 21 U.S.C. § 841(b)(1)(B); and (3) to correspond with the changed statutory provision, it changes the drug quantity contained in the description of the charge from "five hundred grams or more" to "fifty grams or more."

At the plea hearing, the district court read the charge in Count One as it is stated in the Superseding Indictment. In response, Rose pleaded guilty. After Rose pleaded guilty, Vasquez's attorney, Mr. Brooks, pointed out that Vasquez's plea agreement changed the charge from a violation of 21 U.S.C. § 841(b)(1)(A), conspiring to distribute five hundred grams or more of methamphetamine mixture, to a violation of 21 U.S.C. § 841(b)(1)(B), the penalty for fifty grams or more. The Assistant U.S. Attorney, Mr. Laymon, also acknowledged the change. Rose joined in Vasquez's objection regarding the change. The discussion went as follows:

MR. BROOKS [counsel for Vasquez]: Your Honor, our plea agreement says 50 grams, rather than 500 grams, which was the original indictment.

THE COURT: Mr. Laymon?

MR. LAYMON [government counsel]: Judge, as to both Mr. Rose and Mr. Vasquez, the first defendant and the third defendant, they're pleading guilty pursuant to their plea agreements, which stipulate a plea to what would be a lesser included offense, technically, I suppose, but it would be (b)(1)(B) as opposed to (b)(1)(A). . . . [Rose and Vasquez] would be pleading guilty to 50 grams or more, which is the (b)(1)(B) provision.

THE COURT: So, Mr. Brooks, your client is pleading guilty to the charge insofar as it alleges — is it 50 grams or less, and not guilty as the charge alleges over 50 grams? Is that correct?

MR. BROOKS: Your Honor, it's 50 grams or more but not over 500 grams.

THE COURT: Okay. Fifty grams or more —

MR. BROOKS: That's correct.

THE COURT: — but not over 500 grams?

MR. BROOKS: That's correct.

THE COURT: He's pleading not guilty to any amount of 500 or more grams?

MR. BROOKS: That's correct, Your Honor.

MR. MARTINEZ: Judge, on behalf of Mr. Rose, also, Your Honor.

THE COURT: Okay.

Plea Hr'g Tr. at 14-15. Thus, at the plea hearing, the parties and the district court discussed the discrepancies between the Superseding Indictment and the plea agreement regarding the statutory provisions and the drug quantities. They did not,

however, discuss the substitution of the attempt language for the conspiracy language.

Also at the plea hearing, when stating the elements that the government would be required to prove in order to convict Rose and Vasquez of the charges in Count One, the district court listed the elements for conspiracy, rather than attempt. The district court stated:

> In Count 1 you [Rose and Vasquez] are charged with a conspiracy to distribute a mixture or substance which contained a detectable amount of methamphetamine. For you to be found guilty of this offense, the government would have to prove beyond a reasonable doubt the following elements: (1) you conspired or agreed with at least one other person to commit the crime of distributing a mixture or substance which contained a detectable amount of methamphetamine, and (2) you knowingly and voluntarily joined the conspiracy.

Plea Hr'g Tr. at 16.

## 2. Analysis

In his pro se brief, Rose appears to contend that the district court conducted Rose's plea hearing in a manner that violated Rule 11, and thus prevented him from entering a valid guilty plea to Count One. The district court failed adequately to inform Rose of the charges against him in Count One, failed to determine whether Rose understood the charges against him in Count One, and failed to ensure there was a sufficient factual basis for the charge. Rose, however, did not contemporaneously object to the manner in which the district court conducted his plea hearing.

When a defendant has raised the objection below, we review the district court's compliance with Rule 11 for harmless error. *United States v. Syal*, 963 F.2d 900, 904 (6th Cir. 1992) (discussing the harmless error provision contained

in Rule 11(h)). An error is not harmless if the defendant's substantial rights were affected. *Id*. In the present case, Rose did not raise below the issue of the district court's compliance with Rule 11. When a defendant did not contemporaneously object to the district court's alleged failure to comply with the requirements of Rule 11, we review for plain error. *United States v. Vonn*, 535 U.S. 55, 59 (2002). "To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, *i.e.*, obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998).[4]

---

[4] We are aware that the Supreme Court recently granted certiorari in *United States v. Benitez*, 310 F.3d 1221 (9th Cir. 2002), *cert. granted*, 72 U.S.L.W. 3121 (U.S. Dec. 8, 2003) (No. 03-167), to decide whether a defendant, who pleaded guilty during a deficient Rule 11 proceeding and did not contemporaneously object to the deficiency, must prove that he would not have pleaded guilty absent the deficiency in order to obtain reversal. We are also aware that many of our sister circuits impose such a requirement on defendants seeking to obtain reversal under the plain-error standard, and some even impose it on defendants seeking to obtain reversal under the harmless-error standard. *See, e.g.*, *United States v. Dixon*, 308 F.3d 229 (3d Cir. 2002) (plain-error standard); *United States v. Martinez*, 289 F.3d 1023 (7th Cir. 2002) (plain-error standard); *United States v. Martinez*, 277 F.3d 517 (4th Cir.), *cert. denied*, 537 U.S. 899 (2002) (plain-error standard); *United States v. Prado*, 204 F.3d 843 (8th Cir.), *cert. denied*, 531 U.S. 1024 (2000) (harmless-error standard); *United States v. Westcott*, 159 F.3d 107 (2d Cir. 1998), *cert. denied*, 525 U.S. 1084 (1999) (harmless-error standard); *United States v. Noriega-Millan*, 110 F.3d 162 (1st Cir. 1997) (harmless-error standard); *United States v. Lyons*, 53 F.3d 1321 (D.C. Cir. 1995) (harmless-error standard); *United States v. Johnson*, 1 F.3d 296 (5th Cir. 1993) (harmless-error standard); *United States v. Vaughn*, 7 F.3d 1533 (10th Cir. 1993), *cert. denied*, 511 U.S. 1036 (1994) (harmless-error standard).

This circuit has not yet imposed on defendants, who seek to obtain reversal of their convictions pursuant to guilty pleas based upon deficiencies at their Rule 11 proceedings, a requirement that they prove that they would not have pleaded guilty absent the deficiencies, and we decline to do so in this case. Instead, we conclude that the error that

Rule 11 specifies the procedure that district courts must follow when accepting a defendant's guilty plea. Rule 11(c) requires, inter alia, "Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands . . . the nature of the charge to which the plea is offered." Fed. R. Crim. P. 11(c)(1).[5] Rule

---

occurred during Rose's Rule 11 proceeding was so egregious that it prevented Rose from understanding what crime he was pleading guilty to, and thus constitutes plain error. We will not impose on Rose the burden of demonstrating that he would not have pleaded guilty absent the deficiency.

In so holding, we point out that this case is fundamentally different from *Benitez*, in that the error that occurred in this case impugns the ascertainment of Rose's guilt, whereas the error that occurred in *Benitez* merely affected whether the defendant understood the terms of his plea bargain. We conclude that the error that occurred in this case falls squarely within the requirements imposed by Fed. R. Crim. P. 52(b) because it affected Rose's substantial rights. Although a defendant in order to obtain reversal must typically show that the error was prejudicial, i.e., that it "affected the outcome of the district court proceedings," in *United States v. Olano*, 507 U.S. 725, 734-35 (1993), the Supreme Court stated: "There may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome." In *Olano*, the Supreme Court further stated that a "Court of Appeals should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id*. at 736. Such an error occurred in this case.

[5]In 2003, Rule 11 was amended and renumbered. The 2003 version requires district courts to conduct an even more thorough inquiry into a defendant's understanding of the charges against her before accepting a plea of guilty or nolo contendere. In this opinion, we cite to the 2002 version of Rule 11, which was in effect when Rose pleaded guilty. On remand, the district court should ensure that it complies with the 2003 version of Rule 11.

What used to be Rule 11(c)(1) is now part of Rule 11(b)(1). Rule 11(b)(1) now provides:

Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the

11(f) requires: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Fed. R. Crim. P. 11(f).[6] Although the procedure specified in Rule 11 is not constitutionally required, the purpose of Rule 11 is "to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. . . . [and] to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination." *McCarthy v. United States*, 394 U.S. 459, 465 (1969); *see also Syal*, 963 F.2d at 904.

We have decided several cases in which the defendant claimed that the district court violated Rule 11 because the district court did not list the elements that the government must prove beyond a reasonable doubt in order to convict the defendant of the charges in the indictment. *Compare Syal*, 963 F.2d at 902-905 (holding that the district court's failure even to "rehearse the content of the indictment" or to list the elements of the crime violated Rule 11); *United States v. Goldberg*, 862 F.2d 101, 108-09 (6th Cir. 1988) (holding that the district court's failure to list the active concealment element of the crime of misprision of a felony violated Rule 11 because that crime is uncommon); and *United States v. Van Buren*, 804 F.2d 888, 892 (6th Cir. 1986) (holding that the district court's "reading of the indictment and defendant's admission of guilt are not sufficient compliance" with Rule 11 where the crime charged is complex and not easily understood), *with United States v. Edgecomb*, 910 F.2d 1309,

---

defendant understands, the following:

. . .
(G) the nature of each charge to which the defendant is pleading.

[6]What used to be Rule 11(f) is now Rule 11(b)(3). New Rule 11(b)(3) requires: "Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."

1313 (6th Cir. 1990) (holding that district court adequately explained the conspiracy charge at issue in that case by reading the indictment accompanied by the government's recitation of the factual basis, because the conspiracy was easily understood and the district court read the charges in the indictment); and *United States v. Ferguson*, No. 96-6029, 1997 WL 764471, at *3-*4 (6th Cir. Dec. 3, 1997) (holding that the district court's failure to read the charges in the indictment or list the elements of conspiracy to distribute drugs did not violate Rule 11 because that crime is easily understood, the government gave a detailed description of the defendant's conduct, the district court questioned the defendant regarding the conduct that constituted the offense, and the defendant stated that he had discussed the charges with his attorney and understood the charges). Thus, we have concluded that when a defendant claims that the district court violated Rule 11 by failing during the plea colloquy to list the elements of the crime charged, the sufficiency of the plea colloquy depends upon the complexity of the crime charged. "Where the crime is easily understood, several courts have held that a reading of the indictment, or even a summary of the charges in the indictment and an admission by the defendant, is sufficient to establish a factual basis." *Van Buren*, 804 F.2d at 892. Additionally, we have held that a simple conspiracy to distribute drugs is easily understood, and thus a district court may comply with this part of Rule 11 by merely reading the conspiracy charge from the indictment and asking the defendant whether he understands it. *Edgecomb*, 910 F.2d at 1313.

Although Rose was convicted of a simple conspiracy to distribute methamphetamine, a crime this court has held is easily understood, we hold that the district court nonetheless violated Rule 11(c)(1), and thus prevented Rose from entering a valid guilty plea. Rule 11(c)(1) requires the district court to inform the defendant of the charges against him and to determine whether the defendant understands the nature of the charge to which he is pleading guilty. Fed. R. Crim. P. 11(c)(1). "[A] determination of defendant's understanding

involves consideration of the nature of the charge and the dialogue that took place between the defendant and the Court during the Rule 11 proceeding." *Van Buren*, 804 F.2d at 891. In *Edgecomb*, this court considered the crime of conspiracy to possess cocaine with intent to distribute and held that the crime as alleged in that case, is easily understood, and thus the district court there complied with Rule 11 by merely reading the indictment where the government described the facts constituting that conspiracy. *Edgecomb*, 910 F.2d at 1313. In this case, however, an examination of the record and the dialogue that took place between the defendant and the district court reveals that the defendant did not understand the nature of the charge to which he was pleading guilty.

Here, the district court read the description of the charge in Count One from the Superseding Indictment, while Count One was stated differently in the plea agreement. Rose objected to the district court's reading of Count One of the Superseding Indictment, insofar as it charged Rose with conspiring to distribute five hundred grams of methamphetamine, in violation of § 841(b)(1)(A), instead of fifty grams of methamphetamine, in violation of § 841(b)(1)(B). Rose clarified that he was only pleading guilty to fifty grams of methamphetamine, in violation of § 841(b)(1)(B), and thus obviated any Rule 11 problems that might have arisen from the discrepancies between the Superseding Indictment and the plea agreement regarding the statutory provisions and the drug quantities. Rose did not object, however, to the district court's reading of Count One of the Superseding Indictment, insofar as it charged Rose with conspiring to distribute methamphetamine, instead of attempting to distribute methamphetamine. Therefore, the district court failed to determine whether Rose understood that he was pleading guilty to conspiracy. The description of the charges in the plea agreement indicates that Rose thought he was pleading guilty to attempt. The district court, however, accepted Rose's guilty plea and entered a judgment of conviction on the crime of conspiring to distribute methamphetamine. Because Rose might not have understood

that he was pleading guilty to conspiring to distribute methamphetamine, rather than attempting to distribute methamphetamine, he did not enter a valid guilty plea to Count One.

Rule 11(f) requires the district court to determine that there is a sufficient factual basis for the charge to which the defendant is pleading guilty. Fed. R. Crim. P. 11(f). We have held, "[W]hile the exact method of producing a factual basis on the record is subject to a flexible standard of review, the need to have some factual basis will continue to be a rule subject to no exceptions." *Goldberg*, 862 F.2d at 106 (quoting *United States v. Fountain*, 777 F.2d 351, 357 (7th Cir. 1985)). We have also recognized that the district court may determine the existence of a factual basis from various sources, including a statement by the prosecutor or a statement by the defendant. *Id*. at 105. The description of the charges in the plea agreement indicates that Rose thought he was pleading guilty to the crime of attempting to distribute methamphetamine mixture. When ascertaining whether there was a sufficient factual basis, the district court merely asked Rose whether the written factual basis in the plea agreement was true as far as Rose knew, and Rose agreed. Rose's confusion regarding the charge to which he was pleading guilty likely spilled over into his concession that the factual basis was true, and thus his concession does not constitute a sufficient factual basis. Because the district court did not determine that there was a sufficient factual basis for conspiring to distribute methamphetamine mixture, Rose did not enter a valid guilty plea to Count One.

All of the Sixth Circuit cases cited above, discussing the procedure the district court must follow when accepting a defendant's guilty plea, were decided under the harmless error standard. In this case, however, Rose did not raise the issue of compliance with Rule 11 in the district court. Therefore, we must review the district court's actions for plain error. *Vonn*, 535 U.S. at 59. In *Syal*, we held that, in a complex case, the district court's failure to list the elements of the

crime to which the plea is offered "cannot be said to be harmless." 963 F.2d at 905. In reaching this conclusion, in *Syal*, we noted that the defendant's substantial rights were affected by the district court's failure to list the elements. *Id*. at 904. For the reasons discussed above, the errors committed by the district court in this case affected Rose's substantial rights. To meet the higher plain error standard, in addition to finding that the errors affected Rose's substantial rights, we must also find that the error "seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Koeberlein*, 161 F.3d at 949. Because the district court's violations of Rule 11 prevented Rose from understanding the charge to which he was pleading guilty, the violations seriously affected the fairness of the proceedings and rose to the level of plain error.

**B.   District Court's Jurisdiction to Accept Rose's Guilty Plea to Attempt**

In his pro se brief, Rose also appears to argue that the district court lacked jurisdiction to accept Rose's guilty plea and to sentence Rose on Count One because Rose pleaded guilty to attempting to distribute methamphetamine, which was not charged in the Superseding Indictment. The colloquy at Rose's plea hearing and the district court's judgment of conviction indicate that Rose actually pleaded guilty to conspiring to distribute methamphetamine, which was charged in the Superseding Indictment. Therefore, the district court did not, as Rose contends, actually accept a guilty plea to a crime not charged in the Superseding Indictment. This conclusion and our decision to vacate Rose's plea due to the Rule 11 violations makes further analysis of this assignment of error unnecessary.[7]

---

[7]We do, however, point out that "defects in an indictment do not deprive a court of its power to adjudicate a case." *United States v. Cotton*, 535 U.S. 625, 630 (2002).

## C. Sufficiency of the Evidence for Count Three

In his pro se brief, Rose argues that there was insufficient evidence to support his conviction on Count Three of the Superseding Indictment, which charged Rose with carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c).[8] By pleading guilty, Rose admitted the truth of all of the facts set forth in the Superseding Indictment. *United States v. Parker*, 292 F.2d 2, 2 (6th Cir. 1961); *see also United States v. Kyle*, No. 01-6014, 2001 WL 1580232, at *4 (6th Cir. Dec. 6, 2001). Furthermore, the district court properly determined that the facts stated in the Superseding Indictment and the factual basis are sufficient to support a conviction for carrying a firearm during and in relation to a drug trafficking offense; therefore, we reject this assignment of error.

Section 924(c) provides:

any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, *uses or carries* a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime —

    (i)   be sentenced to a term of imprisonment of not less than 5 years.

---

[8] At one point, Rose seems to allege that the Superseding Indictment was insufficient on this count. Appellant's Br. at 4 (stating that the charge was not "proper at indictment"). This court has held, "In order for an indictment to be sufficient, it must contain the elements of the offense charged and fairly inform a defendant of the charges against which he must defend." *Allen v. United States*, 867 F.2d 969, 971 (6th Cir. 1989) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)). This claim has no merit because Count Three clearly charged Rose with carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c).

18 U.S.C. § 924(c)(1)(A) (emphasis added). Thus, a defendant can be charged and convicted of violating § 924(c) under three different theories, including (1) using a firearm during and in relation to a drug trafficking crime, (2) carrying a firearm during and in relation to a drug trafficking crime, or (3) possessing a firearm in furtherance of a drug trafficking crime. Rose was charged under the "carry" prong of § 924(c).

Rose argues that to be charged under the "carry" prong, the defendant must have actively employed the firearm. In his brief, Rose states:

A weapon in a car does not satisfy the carry standard set forth in 18 USC § 924(c)(1)(a). [sic]. *Bailey v US*, 516 US 137.

In *Bousley v US*, 523 US 614, the Court held that, active employment of a firearm is a requirement of charging a defendant with 924(c). Active employment includes uses such as brandishing, displaying, bartering, striking with, firing, or attempting to fire the weapon, but does not include **mere possession of a firearm**; thus, a defendant cannot be charged under § 924(c)(1) merely for (1) storage of a weapon near drugs or drug proceeds, or (2) placement of a firearm to provide a sense of security or to embolden.

Appellant's Br. at 4. Although Rose is correct that *Bailey v. United States*, 516 U.S. 137, 138-39 (1995), and *Bousley v. United States,* 523 U.S. 614, 616 (1998), discuss the active employment requirement, in those cases, the defendants were convicted under the "use" prong of § 924(c). In the present case, Rose was charged under the "carry" prong of § 924(c). In *Bailey*, the Supreme Court held that to obtain a conviction under the "use" prong, the government must show that the defendant actively employed the firearm. *Bailey*, 516 U.S. at

148-49.[9]  The Court further held that showing that the defendant merely possessed the firearm was not sufficient to obtain a conviction under the "use" prong; therefore, "A defendant cannot be charged under [the "use" prong of] 924(c)(1) merely for storing a weapon near drugs or drug proceeds." *Bailey*, 516 U.S. at 149.

The Court in *Bailey* additionally noted that the government is not required to show that a defendant actively employed the firearm to obtain a conviction under the "carry" prong. *Id*. at 150 (stating, "The 'carry' prong of § 924(c)(1) . . . brings some offenders who would not satisfy the 'use' prong within the reach of the statute"). Later, in *Muscarello v. United States*, 524 U.S. 125, 128-39 (1998), the Court discussed the elements the government must prove to obtain a conviction under the "carry" prong of § 924(c). To obtain a conviction under the "carry" prong, the government must show the defendant transported the firearm, with some degree of agency or control, during and in relation to a drug trafficking crime. *See Muscarello,* 524 U.S. at 134, 139; *Hilliard v. United States*, 157 F.3d 444, 449 (6th Cir. 1998). In *Muscarello*, the Court held that the government may obtain a conviction under the "carry" prong by showing the defendant transported the firearm in his car during and in relation to a drug crime. 524 U.S. at 139. The Court stated that the "carry" prong "applies to a person who knowingly possesses and conveys firearms in a vehicle, including in the locked glove compartment or trunk of a car, which the person accompanies." *Id*. at 126-27.

In the present case, the factual basis accompanying Rose's plea agreement states, "After Rose and Vasquez were arrested in Meigs County, police found a loaded .45 caliber handgun in the passenger compartment of [their] automobile." R. at 86

---

[9] *Bousley* discusses "the permissibility of post-*Bailey* collateral attacks on § 924(c)(1) convictions obtained pursuant to guilty pleas." *Bousley,* 523 U.S. at 618.

(Factual Basis). Rose and Vasquez used this automobile to transport the methamphetamine from Dalton, Georgia, to Meigs County, Tennessee. Under *Muscarello* and *Hilliard*, a defendant may be convicted under the "carry" prong if he possesses and conveys a firearm. The district court's finding that the firearm was located in the passenger compartment of the car Rose used to travel to Meigs County and to deliver the methamphetamine was sufficient evidence to support Rose's conviction under the "carry" prong. Therefore, we reject Rose's claim that there was insufficient evidence to support his conviction for carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c). Moreover, the fact that we are vacating Rose's conviction on Count One does not require us to vacate Rose's conviction on Count Three because § 924(c) only requires that the district court be convinced that the defendant carried a weapon in connection with a drug trafficking offense for which he may be prosecuted. *United States v. Ospina*, 18 F.3d 1332, 1335-36 (6th Cir.), *cert. denied*, 512 U.S. 1226 (1994).

**D. District Court's Compliance with Rule 11 for Count Three**

**1. Factual Background**

The description of the charge in Count Three in the plea agreement also differs from that stated in the Superseding Indictment. In the Superseding Indictment, Count Three states:

RALPH VASQUEZ, REGINALD CHARLES ROSE, III, and ERIC ESTRADA, *aided and abetted by each other*, did knowingly and intentionally carry a firearm, that is, a loaded .45 caliber Colt handgun, during and in relation to the drug trafficking crimes set out in Counts One and Two above, in violation of Title 18, United States Code, Sections 2 and 924(c).

R. at 34 (Superseding Indictment) (emphasis added). In the plea agreement, paragraph one states:

> The defendant agrees to plead guilty to the following counts of a Superseding Indictment filed against him in the above-styled case:
>
> . . . Count Three charging him with a violation of Title 18, United States Code, Section 924(c), that is, knowingly and intentionally carry [sic] a firearm, during and in relation to a drug trafficking crime.

R. at 81 (Plea Agreement). Thus, the description in the plea agreement of the charge in Count Three omits the "aided and abetted by each other" language that is included in the Superseding Indictment.

At Rose's plea hearing, the district court read the charge in Count Three from the Superseding Indictment, including the "aided and abetted by each other" language. In response, Rose pleaded guilty. No objections were made regarding the district court's reading of the charge in Count Three. Also at the plea hearing, when stating the elements that the government would be required to prove in order to convict Rose and Vasquez on the charge in Count Three, the district court omitted the "aided and abetted by" language. The district court stated:

> In Count 3 you are charged, Mr. Vasquez and Mr. Rose, with carrying a firearm during and in relation to the commission of a drug-trafficking offense. For you to be convicted of this crime, the government would have to prove beyond a reasonable doubt the following two elements: (1) you committed the drug-trafficking offense alleged in Count 1 of the superseding indictment, and (2) during and in relation to the commission of that drug-trafficking offense, you knowingly carried a firearm.

Plea Hr'g Tr. at 16.

**2. Analysis**

Unlike the discrepancy between the two versions of Count One, the difference between the language of Count Three in the Superseding Indictment and in the plea agreement did not prevent Rose from entering a valid guilty plea to Count Three. In the Superseding Indictment, Rose was charged both as a principal and as an aider and abettor; therefore, the district court did not err in reading the elements for carrying a firearm as a principal and accepting Rose's plea to carrying a firearm as a principal.

As discussed above, when a defendant did not contemporaneously object to the district court's alleged failure to comply with the requirements of Rule 11, we review for plain error. *Vonn*, 535 U.S. at 59. Rule 11 specifies the procedure to be followed by a district court in accepting a defendant's guilty plea. Rule 11(c) requires, among other things, that "[b]efore accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands . . . the nature of the charge to which the plea is offered." Fed. R. Crim. P. 11(c).

Count Three of the Superseding Indictment charges Rose with carrying a firearm during and in relation to a drug trafficking crime, aided and abetted by the co-conspirators. The plea agreement, however, describes Count Three as only charging Rose with carrying a firearm in relation to a drug trafficking crime. Thus, the "aided and abetted" language included in the Superseding Indictment was omitted from the plea agreement. During the plea colloquy, the district court read Count Three, as stated in the Superseding Indictment, but then listed the elements for carrying a firearm without listing the aiding and abetting requirement.

The omission of the "aided and abetted by" language from the plea agreement and from the district court's reading of the elements of the offense during the plea colloquy did not

prevent Rose from entering a valid guilty plea to Count Three. In Count Three of the Superseding Indictment, Rose was charged as both a principal and an aider and abettor;[10] therefore, the district court did not err in reading the elements for carrying a firearm as a principal or accepting Rose's plea to carrying a firearm as a principal. Count Three of the Superseding Indictment states that the defendants "aided and abetted by each other, did knowingly and intentionally carry a firearm." This language charged Rose with carrying the firearm himself, as well as aiding and abetting the other defendants in the offense of carrying a firearm. To charge a defendant with aiding and abetting, but not committing the crime himself, an indictment would state that the defendant aided and abetted another in the commission of the crime. *See, e.g.*, *United States v. Lawson*, 872 F.2d 179, 181 (6th Cir.), *cert. denied*, 493 U.S. 834 (1989) (considering the defendant charged "with aiding and abetting [another] in knowingly receiving and possessing illegal machine guns in violation of 18 U.S.C. § 2 and 26 U.S.C. § 5861(c)"). Because Count Three of the Superseding Indictment charged Rose with carrying a firearm as a principal and the written plea agreement described Count Three as charging Rose with carrying a firearm as a principal, the district properly advised Rose of the nature of the charges against him in compliance with Rule 11(c)(1).

Additionally, in a recent unpublished opinion, we held that aiding and abetting is "merely a theory of liability, and not an offense distinct in and of itself." *United States v. Taniguchi*, Nos. 00-4495, 00-4496, 2002 WL 31371978, at *13 (6th Cir. Oct. 11, 2002) (citing *United States v. Schuh*, 289 F.3d 968, 976 (7th Cir. 2002)). In *Taniguchi*, we upheld the

---

[10]Regardless of whether this additional language makes the Superseding Indictment duplicitous or is mere surplusage, Rose may not argue that the Superseding Indictment is defective on these bases because by pleading guilty, Rose waived his objection to all non-jurisdictional defects in the indictment. *United States v. Moloney*, 287 F.3d 236, 239 (2d Cir. 2002).

defendant's conviction for aiding and abetting another in receiving illegal firearms, even though the indictment did not include language referring to aiding and abetting liability.[11] *Id*. at *13. The reasoning of *Taniguchi* applies in this case. The omission of the "aided and abetted language" from the plea agreement and from the district court's reading of the elements of the offense during the plea colloquy does not constitute a violation of Rule 11.

### E.  Drug Quantity Used to Calculate Rose's Sentence

#### 1.  Factual Background

On January 4, 2002, Rose was sentenced to 138 months' imprisonment (seventy-eight months on Count One and sixty months on Count Three) and four years of supervised release. At the sentencing hearing, Rose joined Vasquez's objection to the amount of methamphetamine used to determine each of their base offense levels. During the objection, Vasquez argued that under United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1, Application Note 12 ("Note 12"), the additional two pounds of methamphetamine that Rose and Vasquez agreed to deliver should not be considered in determining his base offense level because Vasquez and Rose were not reasonably capable of delivering the additional two pounds due to their imminent arrest.

In response to the objection, the government argued that under Note 12, these additional two pounds of methamphetamine should be considered in determining Rose's and Vasquez's base offense levels because they agreed to deliver, intended to deliver, and were reasonably capable of delivering the additional two pounds. The government supported its argument by showing that during the same

---

[11]In *Taniguchi*, we held that the indictment was sufficient because it cited 18 U.S.C. § 2, which addresses aiding and abetting liability. *United States v. Taniguchi*, Nos. 00-4495, 00-4496, 2002 WL 31371978, at *13 (6th Cir. Oct. 11, 2002).

month, Estrada, Rose's and Vasquez's supplier, engaged in transactions for one-half of a pound, one pound, and two pounds of methamphetamine.[12]

The district court overruled the objection and accepted the calculations contained in the Presentence Report ("PSR"). The PSR used the additional two pounds of methamphetamine that Rose and Vasquez agreed to deliver and the one pound of methamphetamine that Rose and Vasquez actually delivered to determine Rose's base offense level. In accordance with the PSR, the district court set Rose's base offense level for Count One at level thirty-two. Rose received a three-level downward adjustment for acceptance of responsibility, making Rose's total offense level twenty-nine for Count One. The district court also granted a downward departure of three levels in accordance with the government's § 5K1.1 motion, which reduced Rose's offense level to twenty-six and resulted in a sentencing guideline range of eighty-seven to ninety-seven months for Count One.

## 2. Analysis

Rose's claim of error regarding the quantity of drug used to determine his base offense level is identical to his co-defendant's claim, which this court analyzed fully in *United States v. Vasquez*, 352 F.3d 1067 (6th Cir. 2003). Consistent with *Vasquez*, we hold that the district court did not err in determining Rose's base offense level based upon both the

---

[12]During March 2001, the Georgia Bureau of Investigation ("GBI") investigated Estrada and Hector Garnica ("Garnica"). On March 12, 2001, Estrada sold one-half of a pound of methamphetamine to a Georgia CI. Then, on March 16, 2001, Estrada and Braulio Garnica ("Braulio") delivered an additional one pound of methamphetamine to the CI. On March 18, Estrada arranged to deliver two pounds of methamphetamine to the same CI for $19,000. On March 24, 2001, Braulio delivered the two pounds of methamphetamine to the CI for Estrada. Estrada, Garnica, and another charged co-conspirator were also present at that delivery.

one pound of methamphetamine that Rose actually delivered and the additional two pounds of methamphetamine that Rose agreed to deliver. Note 12 provides:

> In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense. . . . If, however, the defendant establishes that he or she did not intend to provide, or was not reasonably capable of providing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that he or she did not intend to provide or was not reasonably capable of providing.

U.S.S.G. § 2D1.1, cmt. n.12 (2001). Rose failed to prove that he did not intend to provide or that he was not reasonably capable of providing the additional two pounds of methamphetamine; therefore, the district court properly used a drug quantity of three pounds of methamphetamine mixture to determine Rose's base offense level.

Rose raises one additional claim of error regarding the calculation of his sentence. Rose contends that the PSR incorrectly attributes 4.5 pounds of methamphetamine mixture to him in the determination of his base offense level. This claim is meritless because it is based upon a misreading of the PSR. Although the PSR refers to a drug quantity of 4.5 pounds of methamphetamine mixture, it attributes that amount to Garnica, Estrada's supplier. The 4.5 pounds was not attributed to Rose. Only three pounds of methamphetamine mixture were attributed to Rose and his offense level was based upon a drug quantity of three pounds of methamphetamine mixture.

### IV.  CONCLUSION

The district court committed plain error by accepting Rose's guilty plea to Count One in a manner that violated Rule 11.  The district court did not commit plain error in accepting Rose's guilty plea to Count Three.  Therefore, we **VACATE** Rose's conviction and sentence as to Count One and **REMAND** for proceedings consistent with this opinion.